### REPLACEMENT SEVERED PROMISSORY NOTE A-1

$24,000,000.00                                                                                                July 18, 2017

This REPLACEMENT SEVERED PROMISSORY NOTE A-1 (as the same may hereafter be amended, supplemented, restated, replaced, increased, extended, consolidated or severed from time to time, this "*Note A-1*"), is made by 100 BERLIN LAND, LLC, 205 WOLF LAND, LLC, 5500 MIDLAND LAND, LLC, 204 FOX LAND, LLC, HIGH POINT LAND, LLC, APPLETON LAND, LLC and 200 STL LAND, LLC, each a Delaware limited liability company, having an address at 1275 W. Granada Blvd., Suite 3B, Ormond Beach, Florida 32174 (collectively, "*Borrower*"), in favor of NATIXIS REAL ESTATE CAPITAL LLC, a Delaware limited liability company, at its principal place of business at 1251 Avenue of the Americas, New York, New York 10020 (together with its successors and assigns "*Lender*").

#### W I T N E S SETH:

WHEREAS, Borrower previously executed and delivered to Lender that certain Promissory Note, dated as of July 18, 2017, in the original principal amount of $62,465,000.00 (the "*Original Note*");

WHEREAS, pursuant to that certain Note Splitter and Modification Agreement, dated as of the date hereof, the Original Note has been split, severed and modified into (i) this Note A-1, evidencing a portion of the principal sum evidenced by the Original Note equal to Twenty-Four Million and No/100 Dollars ($24,000,000.00) (the "*Note A-1 Indebtedness*"), and (ii) that certain Replacement Severed Promissory Note A-2, dated the date hereof (the "*Note A-2*"), made by Borrower in favor of Lender and evidencing a portion of the principal sum evidenced by the Original Note equal to Eleven Million Four Hundred Sixty-Five Thousand and No/100 Dollars ($11,465,000.00); and (iii) that certain Replacement Severed Promissory Note A-3, dated the date hereof (the "*Note A-3*"), made by Borrower in favor of Lender and evidencing the anticipated future funding principal amount of up to Fourteen Million Eight Hundred Eighty Thousand and No/100 Dollars ($14,880,000.00) with an initial outstanding balance on the date hereof of $0.00; and (iv) that certain Replacement Severed Promissory Note A-4, dated the date hereof (the "*Note A-4*"), made by Borrower in favor of Lender and evidencing a portion of the principal sum evidenced by the Original Note equal to Twenty-Seven Million and No/100 Dollars ($23,120,000.00); and

WHEREAS, Borrower and Lender desire to replace the Original Note with this Note A-1 (together with Note A-2, A-3 and A-4) and to evidence the Note A-1 Indebtedness by this Note A-1;

NOW THEREFORE, FOR VALUE RECEIVED, Borrower hereby unconditionally promises to pay to the order of Lender, at its address set forth above or at such other place as the holder hereof may from time to time designate in writing, the principal sum of Twenty-Four Million and No/100 Dollars ($24,000,000.00), in lawful money of the United States of America, with interest thereon to be computed from the date of this Note A-1 at the Interest Rate, and to be paid in accordance with the terms of this Note A-1 and that certain Loan Agreement, dated as of July 18, 2017, between Borrower and Lender (as the same is hereby and may hereafter be amended, restated, replaced, supplemented, renewed, extended or otherwise modified from time to time, the "*Loan Agreement*"). Capitalized terms used but not defined herein shall have the respective meanings given such terms in the Loan Agreement.

1.      **Payment Terms.** Borrower shall pay the Note A-1 Monthly Debt Service Payment Amount to Lender in the manner and at the times specified in Article 2 of the Loan Agreement, which payments shall be applied in the order of priority set forth in said Article 2. Borrower shall also pay to

Lender interest at the Default Rate, Late Payment Charges, the Yield Maintenance Premium, if any, and all other amounts due and payable as and when provided for in the Loan Agreement. The balance of the Note A-1 Indebtedness, together with all accrued and unpaid interest thereon, and all other amounts payable to Lender hereunder, under the Loan Agreement and under the other Loan Documents shall be due and payable on the Maturity Date.

      2.    **Loan Documents.** This Note A-1 is partial evidence of that certain loan made by Lender to Borrower and is executed pursuant to the terms and conditions of the Loan Agreement. This Note is secured by and entitled to the benefits of, among other things, the Security Instrument and the other Loan Documents. Reference is made to the Loan Documents for a description of the nature and extent of the security afforded thereby, the rights of the holder hereof in respect of such security, the terms and conditions upon which this Note A-1 is secured and the rights and duties of the holder of this Note A-1. All of the agreements, conditions, covenants, provisions and stipulations contained in the Loan Agreement and the other Loan Documents are by this reference hereby made part of this Note A-1 to the same extent and with the same force and effect as if they were fully set forth in this Note A-1, and Borrower covenants and agrees to keep and perform the same, or cause the same to be kept and performed, in accordance with their terms.

      3.    **Loan Acceleration; Prepayment.** The Debt shall, without notice, become immediately due and payable at the option of Lender upon the happening and only during the continuance of any Event of Default. This Note A-1 may not be prepaid except as otherwise expressly provided in, and subject to the terms and conditions, of the Loan Agreement.

      4.    **Revival.** To the extent that Borrower makes a payment or Lender receives any payment or proceeds for Borrower's benefit, which are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver, custodian or any other party under the Bankruptcy Code or any other bankruptcy law, common law or equitable cause, then, to such extent, the obligations of Borrower hereunder intended to be satisfied shall be revived and continue as if such payment or proceeds had not been received by Lender.

      5.    **Amendments.** This Note A-1 may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought. Whenever used, the singular number shall include the plural, the plural the singular, and the words "Lender" and "Borrower" shall include their respective successors, assigns, heirs, executors and administrators. If Borrower consists of more than one person or party, the obligations and liabilities of each such person or party shall be joint and several.

      6.    **Waiver.** Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, protest, notice of protest, notice of nonpayment, notice of intent to accelerate the maturity hereof and of acceleration. No release of any security for the Debt or any Person liable for payment of the Debt, no extension of time for payment of this Note A-1 or any installment hereof, and no alteration, amendment or waiver of any provision of the Loan Documents made by agreement between Lender and any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, and any other Person or party who may become liable under the Loan Documents, for the payment of all or any part of the Debt.

~#4822-4836-0012~

7.    **Exculpation.**  It is expressly agreed that recourse against Borrower for failure to perform and observe its obligations contained in this Note A-1 shall be limited as and to the extent provided in Section 10.1 of the Loan Agreement.

8.    **Notices.**  All notices or other communications required or permitted to be given pursuant hereto shall be given in the manner specified in the Loan Agreement directed to the parties at their respective addresses as provided therein.

9.    **Governing Law.**  **THIS NOTE A-1 SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS EXCEPT THAT IT IS THE INTENT OF BORROWER THAT THE PROVISIONS OF SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK SHALL APPLY TO THIS NOTE A-1) AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA, WHICH LAWS OF THE UNITED STATES OF AMERICA SHALL, TO THE EXTENT THE SAME PREEMPT SUCH STATE LAWS, GOVERN AND BE CONTROLLING.**

10.    **Replacement Note**.  This Note A-1 evidences the Note A-1 Indebtedness, constituting a portion of the same indebtedness evidenced by the Original Note.  This Note A-1 (together with Note A-2, A-3 and A-4) is given in replacement and substitution for, but not in satisfaction or repayment of, the Original Note.  This Note A-1 is not intended to (and shall not be construed to) constitute a novation of the Original Note or the obligations evidenced thereby, nor shall this Note A-1 evidence new or additional indebtedness.  All accrued and unpaid interest and other amounts that are due and payable under the Original Note shall remain payable under this Note A-1 (together with Note A-2, Note A-3 and Note A-4) which constitutes a portion of the Debt and when combined with Note A-2, Note A-3 and Note A-4 constitutes all Debt.

[THE REMAINDER OF THE PAGE IS INTENTIONALLY BLANK]

~#4822-4836-0012~

IN WITNESS WHEREOF, Borrower has executed this Note A-1 as of the date first written above.

**BORROWER**:

100 BERLIN LAND, LLC,
a Delaware limited liability company

By: _____
Name:    Joseph G. Gillespie, III
Title:    Manager

205 WOLF LAND, LLC,
a Delaware limited liability company

By: _____
Name:    Joseph G. Gillespie, III
Title:    Manager

5500 MIDLAND LAND, LLC,
a Delaware limited liability company

By: _____
Name:    Joseph G. Gillespie, III
Title:    Manager

204 FOX LAND, LLC,
a Delaware limited liability company

By: _____
Name:    Joseph G. Gillespie, III
Title:    Manager

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

4

HIGH POINT LAND, LLC,
a Delaware limited liability company

By: _____
Name:    Joseph G. Gillespie, III
Title:    Manager

APPLETON LAND, LLC,
a Delaware limited liability company

By: _____
Name:    Joseph G. Gillespie, III
Title:    Manager

200 STL LAND, LLC,
a Delaware limited liability company

By: _____
Name:    Joseph G. Gillespie, III
Title:    Manager

14201702

## ALLONGE

ALLONGE to that certain Replacement Severed Promissory Note A-1 dated as of July 18, 2017 in the original principal amount of $24,000,000.00, executed by the entities identified on Schedule A, attached hereto and by this reference made a part hereof, payable to the order of NATIXIS REAL ESTATE CAPITAL LLC, a Delaware limited liability company.

Pay to the order of WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF UBS COMMERCIAL MORTGAGE TRUST 2017-C2, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2017-C2, without recourse, representation or warranty.

Dated as of the __17__ day of August, 2017

**NATIXIS REAL ESTATE CAPITAL LLC, a Delaware limited liability company**

By: _____  
Name:   Jerry Tang  
Title:    Executive Director

By: _____  
Name:  
Title:

Delphine Clerjaud  
Vice President

Reference No.: 6835M.002-008  
Matter Name: IC Leased Fee Hotel Portfolio  
Pool: UBS 2017-C2

## SCHEDULE A
### (jointly and severally, "BORROWER")

1. 100 BERLIN LAND, LLC, a Delaware limited liability company
2. 205 WOLF LAND, LLC, a Delaware limited liability company
3. 5500 MIDLAND LAND, LLC, a Delaware limited liability company
4. 204 FOX LAND, LLC, a Delaware limited liability company
5. HIGH POINT LAND, LLC, a Delaware limited liability company
6. APPLETON LAND, LLC, a Delaware limited liability company
7. 200 STL LAND, LLC, a Delaware limited liability company

## REPLACEMENT SEVERED PROMISSORY NOTE A-4

$27,000,000.00                                                                                    July 18, 2017

This REPLACEMENT SEVERED PROMISSORY NOTE A-4 (as the same may hereafter be amended, supplemented, restated, replaced, increased, extended, consolidated or severed from time to time, this "*Note A-1*"), is made by 100 BERLIN LAND, LLC, 205 WOLF LAND, LLC, 5500 MIDLAND LAND, LLC, 204 FOX LAND, LLC, HIGH POINT LAND, LLC, APPLETON LAND, LLC and 200 STL LAND, LLC, each a Delaware limited liability company, having an address at 1275 W. Granada Blvd., Suite 3B, Ormond Beach, Florida 32174 (collectively, "*Borrower*"), in favor of NATIXIS REAL ESTATE CAPITAL LLC, a Delaware limited liability company, at its principal place of business at 1251 Avenue of the Americas, New York, New York 10020 (together with its successors and assigns "*Lender*").

W I T N E S SETH:

WHEREAS, Borrower previously executed and delivered to Lender that certain Promissory Note, dated as of July 18, 2017, in the original principal amount of $62,465,000.00 (the "*Original Note*");

WHEREAS, pursuant to that certain Note Splitter and Modification Agreement, dated as of the date hereof, the Original Note has been split, severed and modified into (i) this Note A-4, evidencing a portion of the principal sum evidenced by the Original Note equal to Twenty-Seven Million and No/100 Dollars ($27,000,000.00) (the "*Note A-4 Indebtedness*"), and (ii) that certain Replacement Severed Promissory Note A-1, dated the date hereof (the "*Note A-1*"), made by Borrower in favor of Lender and evidencing a portion of the principal sum evidenced by the Original Note equal to Twenty Four Million and No/100 Dollars ($24,000,000.00); and (iii) that certain Replacement Severed Promissory Note A-2, dated the date hereof (the "*Note A-2*"), made by Borrower in favor of Lender and evidencing a portion of the principal sum evidenced by the Original Note equal to Eleven Million Four Hundred Sixty-Five Thousand and No/100 Dollars ($11,465,000.00); and (iv) that certain Replacement Severed Promissory Note A-3, dated the date hereof (the "*Note A-3*"), made by Borrower in favor of Lender and evidencing the anticipated future funding principal amount of up to Fourteen Million Eight Hundred Eighty Thousand and No/100 Dollars ($14,880,000.00) with an initial outstanding balance on the date hereof of $0.00; and

WHEREAS, Borrower and Lender desire to replace the Original Note with this Note A-4 (together with Note A-1, A-2 and A-3) and to evidence the Note A-4 Indebtedness by this Note A-4;

NOW THEREFORE, FOR VALUE RECEIVED, Borrower hereby unconditionally promises to pay to the order of Lender, at its address set forth above or at such other place as the holder hereof may from time to time designate in writing, the principal sum of Twenty-Seven Million and No/100 Dollars ($27,000,000.00), in lawful money of the United States of America, with interest thereon to be computed from the date of this Note A-4 at the Interest Rate, and to be paid in accordance with the terms of this Note A-4 and that certain Loan Agreement, dated as of July 18, 2017, between Borrower and Lender (as the same is hereby and may hereafter be amended, restated, replaced, supplemented, renewed, extended or otherwise modified from time to time, the "*Loan Agreement*"). Capitalized terms used but not defined herein shall have the respective meanings given such terms in the Loan Agreement.

1.    **Payment Terms.**  Borrower shall pay the Note A-4 Monthly Debt Service Payment Amount to Lender in the manner and at the times specified in Article 2 of the Loan Agreement, which payments shall be applied in the order of priority set forth in said Article 2.  Borrower shall also pay to

1

Lender interest at the Default Rate, Late Payment Charges, the Yield Maintenance Premium, if any, and all other amounts due and payable as and when provided for in the Loan Agreement. The balance of the Note A-4 Indebtedness, together with all accrued and unpaid interest thereon, and all other amounts payable to Lender hereunder, under the Loan Agreement and under the other Loan Documents shall be due and payable on the Maturity Date.

     **2.**     **Loan Documents.** This Note A-4 is partial evidence of that certain loan made by Lender to Borrower and is executed pursuant to the terms and conditions of the Loan Agreement. This Note is secured by and entitled to the benefits of, among other things, the Security Instrument and the other Loan Documents. Reference is made to the Loan Documents for a description of the nature and extent of the security afforded thereby, the rights of the holder hereof in respect of such security, the terms and conditions upon which this Note A-4 is secured and the rights and duties of the holder of this Note A-4. All of the agreements, conditions, covenants, provisions and stipulations contained in the Loan Agreement and the other Loan Documents are by this reference hereby made part of this Note A-4 to the same extent and with the same force and effect as if they were fully set forth in this Note A-4, and Borrower covenants and agrees to keep and perform the same, or cause the same to be kept and performed, in accordance with their terms.

     **3.**     **Loan Acceleration; Prepayment.** The Debt shall, without notice, become immediately due and payable at the option of Lender upon the happening and only during the continuance of any Event of Default. This Note A-4 may not be prepaid except as otherwise expressly provided in, and subject to the terms and conditions, of the Loan Agreement.

     **4.**     **Revival.** To the extent that Borrower makes a payment or Lender receives any payment or proceeds for Borrower's benefit, which are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver, custodian or any other party under the Bankruptcy Code or any other bankruptcy law, common law or equitable cause, then, to such extent, the obligations of Borrower hereunder intended to be satisfied shall be revived and continue as if such payment or proceeds had not been received by Lender.

     **5.**     **Amendments.** This Note A-4 may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought. Whenever used, the singular number shall include the plural, the plural the singular, and the words "Lender" and "Borrower" shall include their respective successors, assigns, heirs, executors and administrators. If Borrower consists of more than one person or party, the obligations and liabilities of each such person or party shall be joint and several.

     **6.**     **Waiver.** Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, protest, notice of protest, notice of nonpayment, notice of intent to accelerate the maturity hereof and of acceleration. No release of any security for the Debt or any Person liable for payment of the Debt, no extension of time for payment of this Note A-4 or any installment hereof, and no alteration, amendment or waiver of any provision of the Loan Documents made by agreement between Lender and any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, and any other Person or party who may become liable under the Loan Documents, for the payment of all or any part of the Debt.

7.    **Exculpation.**  It is expressly agreed that recourse against Borrower for failure to perform and observe its obligations contained in this Note A-4 shall be limited as and to the extent provided in Section 10.1 of the Loan Agreement.

8.    **Notices.**  All notices or other communications required or permitted to be given pursuant hereto shall be given in the manner specified in the Loan Agreement directed to the parties at their respective addresses as provided therein.

9.    **Governing Law.    THIS NOTE A-4 SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS EXCEPT THAT IT IS THE INTENT OF BORROWER THAT THE PROVISIONS OF SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK SHALL APPLY TO THIS NOTE A-4) AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA, WHICH LAWS OF THE UNITED STATES OF AMERICA SHALL, TO THE EXTENT THE SAME PREEMPT SUCH STATE LAWS, GOVERN AND BE CONTROLLING.**

10.    **Replacement Note**.  This Note A-4 evidences the Note A-4 Indebtedness, constituting a portion of the same indebtedness evidenced by the Original Note.  This Note A-4 (together with Note A-1, A-2 and A-3) is given in replacement and substitution for, but not in satisfaction or repayment of, the Original Note.  This Note A-4 is not intended to (and shall not be construed to) constitute a novation of the Original Note or the obligations evidenced thereby, nor shall this Note A-4 evidence new or additional indebtedness.  All accrued and unpaid interest and other amounts that are due and payable under the Original Note shall remain payable under this Note A-4 (together with Note A-1, A-2 and A-3) which constitutes a portion of the Debt and when combined with Note A-1, A-2 and A-3 constitutes all Debt.

[THE REMAINDER OF THE PAGE IS INTENTIONALLY BLANK]

IN WITNESS WHEREOF, Borrower has executed this Note A-4 as of the date first written above.

**BORROWER:**

100 BERLIN LAND, LLC,
a Delaware limited liability company

By: _____
Name:    Joseph G. Gillespie, III
Title:    Manager

205 WOLF LAND, LLC,
a Delaware limited liability company

By: _____
Name:    Joseph G. Gillespie, III
Title:    Manager

5500 MIDLAND LAND, LLC,
a Delaware limited liability company

By: _____
Name:    Joseph G. Gillespie, III
Title:    Manager

204 FOX LAND, LLC,
a Delaware limited liability company

By: _____
Name:    Joseph G. Gillespie, III
Title:    Manager

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

4

~#4816-1547-9116~

HIGH POINT LAND, LLC,
a Delaware limited liability company

By: _____
Name:      Joseph G. Gillespie, III
Title:     Manager

APPLETON LAND, LLC,
a Delaware limited liability company

By: _____
Name:      Joseph G. Gillespie, III
Title:     Manager

200 STL LAND, LLC,
a Delaware limited liability company

By: _____
Name:      Joseph G. Gillespie, III
Title:     Manager

## REPLACEMENT SEVERED PROMISSORY NOTE A-2

$11,465,000.00                                                                                                    July 18, 2017

This REPLACEMENT SEVERED PROMISSORY NOTE A-2 (as the same may hereafter be amended, supplemented, restated, replaced, increased, extended, consolidated or severed from time to time, this "**Note A-2**"), is made by 100 BERLIN LAND, LLC, 205 WOLF LAND, LLC, 5500 MIDLAND LAND, LLC, 204 FOX LAND, LLC, HIGH POINT LAND, LLC, APPLETON LAND, LLC and 200 STL LAND, LLC, each a Delaware limited liability company, having an address at 1275 W. Granada Blvd., Suite 3B, Ormond Beach, Florida 32174 (collectively, "**Borrower**"), in favor of NATIXIS REAL ESTATE CAPITAL LLC, a Delaware limited liability company, at its principal place of business at 1251 Avenue of the Americas, New York, New York 10020 (together with its successors and assigns "**Lender**").

W I T N E S SETH:

WHEREAS, Borrower previously executed and delivered to Lender that certain Promissory Note, dated as of July 18, 2017, in the original principal amount of $62,465,000.00 (the "**Original Note**");

WHEREAS, pursuant to that certain Note Splitter and Modification Agreement, dated as of the date hereof, the Original Note has been split, severed and modified into (i) this Note A-2, evidencing a portion of the principal sum evidenced by the Original Note equal to Eleven Million Four Hundred Sixty-Five Thousand and No/100 Dollars ($11,465,000.00) (the "**Note A-2 Indebtedness**"), and (ii) that certain Replacement Severed Promissory Note A-1, dated the date hereof (the "**Note A-1**"), made by Borrower in favor of Lender and evidencing a portion of the principal sum evidenced by the Original Note equal to Twenty-Four Million and No/100 Dollars ($24,000,000.00); and (iii) that certain Replacement Severed Promissory Note A-3, dated the date hereof (the "**Note A-3**"), made by Borrower in favor of Lender and evidencing the anticipated future funding principal amount of up to Fourteen Million Eight Hundred Eighty Thousand and No/100 Dollars ($14,880,000.00) with an initial outstanding balance on the date hereof of $0.00; and (iv) that certain Replacement Severed Promissory Note A-4, dated the date hereof (the "**Note A-4**"), made by Borrower in favor of Lender and evidencing a portion of the principal sum evidenced by the Original Note equal to Twenty-Seven Million and No/100 Dollars ($27,000,000.00); and

WHEREAS, Borrower and Lender desire to replace the Original Note with this Note A-2 (together with Note A-1, A-3 and A-4) and to evidence the Note A-2 Indebtedness by this Note A-2;

NOW THEREFORE, FOR VALUE RECEIVED, Borrower hereby unconditionally promises to pay to the order of Lender, at its address set forth above or at such other place as the holder hereof may from time to time designate in writing, the principal sum of Eleven Million Four Hundred Sixty-Five Thousand and No/100 Dollars ($11,465,000.00), in lawful money of the United States of America, with interest thereon to be computed from the date of this Note A-2 at the Interest Rate, and to be paid in accordance with the terms of this Note A-1 and that certain Loan Agreement, dated as of July 18, 2017, between Borrower and Lender (as the same is hereby and may hereafter be amended, restated, replaced, supplemented, renewed, extended or otherwise modified from time to time, the "**Loan Agreement**"). Capitalized terms used but not defined herein shall have the respective meanings given such terms in the Loan Agreement.

1.    **Payment Terms.**  Borrower shall pay the Note A-2 Monthly Debt Service Payment Amount to Lender in the manner and at the times specified in Article 2 of the Loan Agreement, which

1

~#4843-1988-7436~

payments shall be applied in the order of priority set forth in said Article 2. Borrower shall also pay to Lender interest at the Default Rate, Late Payment Charges, the Yield Maintenance Premium, if any, and all other amounts due and payable as and when provided for in the Loan Agreement. The balance of the Note A-2 Indebtedness, together with all accrued and unpaid interest thereon, and all other amounts payable to Lender hereunder, under the Loan Agreement and under the other Loan Documents shall be due and payable on the Maturity Date.

2.    **Loan Documents.** This Note A-2 is partial evidence of that certain loan made by Lender to Borrower and is executed pursuant to the terms and conditions of the Loan Agreement. This Note is secured by and entitled to the benefits of, among other things, the Security Instrument and the other Loan Documents. Reference is made to the Loan Documents for a description of the nature and extent of the security afforded thereby, the rights of the holder hereof in respect of such security, the terms and conditions upon which this Note A-2 is secured and the rights and duties of the holder of this Note A-2. All of the agreements, conditions, covenants, provisions and stipulations contained in the Loan Agreement and the other Loan Documents are by this reference hereby made part of this Note A-2 to the same extent and with the same force and effect as if they were fully set forth in this Note A-2, and Borrower covenants and agrees to keep and perform the same, or cause the same to be kept and performed, in accordance with their terms.

3.    **Loan Acceleration; Prepayment.** The Debt shall, without notice, become immediately due and payable at the option of Lender upon the happening and only during the continuance of any Event of Default. This Note A-2 may not be prepaid except as otherwise expressly provided in, and subject to the terms and conditions, of the Loan Agreement.

4.    **Revival.** To the extent that Borrower makes a payment or Lender receives any payment or proceeds for Borrower's benefit, which are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver, custodian or any other party under the Bankruptcy Code or any other bankruptcy law, common law or equitable cause, then, to such extent, the obligations of Borrower hereunder intended to be satisfied shall be revived and continue as if such payment or proceeds had not been received by Lender.

5.    **Amendments.** This Note A-2 may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought. Whenever used, the singular number shall include the plural, the plural the singular, and the words "Lender" and "Borrower" shall include their respective successors, assigns, heirs, executors and administrators. If Borrower consists of more than one person or party, the obligations and liabilities of each such person or party shall be joint and several.

6.    **Waiver.** Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, protest, notice of protest, notice of nonpayment, notice of intent to accelerate the maturity hereof and of acceleration. No release of any security for the Debt or any Person liable for payment of the Debt, no extension of time for payment of this Note A-2 or any installment hereof, and no alteration, amendment or waiver of any provision of the Loan Documents made by agreement between Lender and any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, and any other Person or party who may become liable under the Loan Documents, for the payment of all or any part of the Debt.

-#4843-1988-7436~

7.      **Exculpation.**  It is expressly agreed that recourse against Borrower for failure to perform and observe its obligations contained in this Note A-2 shall be limited as and to the extent provided in Section 10.1 of the Loan Agreement.

8.      **Notices.**  All notices or other communications required or permitted to be given pursuant hereto shall be given in the manner specified in the Loan Agreement directed to the parties at their respective addresses as provided therein.

9.      **Governing Law.**  **THIS NOTE A-2 SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS EXCEPT THAT IT IS THE INTENT OF BORROWER THAT THE PROVISIONS OF SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK SHALL APPLY TO THIS NOTE A-1) AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA, WHICH LAWS OF THE UNITED STATES OF AMERICA SHALL, TO THE EXTENT THE SAME PREEMPT SUCH STATE LAWS, GOVERN AND BE CONTROLLING.**

10.     **Replacement Note**.  This Note A-2 evidences the Note A-2 Indebtedness, constituting a portion of the same indebtedness evidenced by the Original Note.  This Note A-2 (together with Note A-1, A-3 and A-4) is given in replacement and substitution for, but not in satisfaction or repayment of, the Original Note.  This Note A-2 is not intended to (and shall not be construed to) constitute a novation of the Original Note or the obligations evidenced thereby, nor shall this Note A-2 evidence new or additional indebtedness.  All accrued and unpaid interest and other amounts that are due and payable under the Original Note shall remain payable under this Note A-2 (together with Note A-1, A-3 and A-4) which constitutes a portion of the Debt and when combined with Note A-1, A-3 and A-4 constitutes all Debt.

[THE REMAINDER OF THE PAGE IS INTENTIONALLY BLANK]

~#4843-1988-7436~

IN WITNESS WHEREOF, Borrower has executed this Note A-2 as of the date first written above.

**BORROWER:**

100 BERLIN LAND, LLC,
a Delaware limited liability company

By: _____
Name:    Joseph G. Gillespie, III
Title:    Manager

205 WOLF LAND, LLC,
a Delaware limited liability company

By: _____
Name:    Joseph G. Gillespie, III
Title:    Manager

5500 MIDLAND LAND, LLC,
a Delaware limited liability company

By: _____
Name:    Joseph G. Gillespie, III
Title:    Manager

204 FOX LAND, LLC,
a Delaware limited liability company

By: _____
Name:    Joseph G. Gillespie, III
Title:    Manager

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

~#4843-1988-7436~

HIGH POINT LAND, LLC,
a Delaware limited liability company

By: _____
Name:     Joseph G. Gillespie, III
Title:     Manager


APPLETON LAND, LLC,
a Delaware limited liability company

By: _____
Name:     Joseph G. Gillespie, III
Title:     Manager


200 STL LAND, LLC,
a Delaware limited liability company

By: _____
Name:     Joseph G. Gillespie, III
Title:     Manager

�֍�֍�֍

# MLS
# NEXT DOCUMENT

�֍✖✖