ORDERED.

Dated: August 20, 2021

*Karen S. Jennemann*
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| Consolidated Land Holdings, LLC, ) | Case No. 6:19-bk-04760-KSJ |
| ) | Chapter 11 |
| Debtor. ) | Jointly Administered[1] |
| ) | |

**MEMORANDUM OPINION DENYING
CONFIRMATION OF DEBTORS' PLAN OF REORGANIZATION**

Consolidated Land Holdings, LLC, and its jointly administered debtors (collectively, the "Debtors"), and a secured creditor, Wells Fargo Bank, N.A. ("Wells Fargo"), have filed competing liquidating plans of reorganization. The Court already has determined that Wells Fargo's Plan, as supplemented,[2] is confirmable.[3] On June 30, 2021, the Court held a trial to determine if the Debtors' Joint Plan of Reorganization, as

---

[1] Jointly administered cases: Consolidated Land Holdings, LLC, Case No. 6:19-bk-04760; Land Capital, LLC, Case No. 6:19-bk-04761; 100 Berlin Land, LLC, Case No. 6:19-bk-04762; 200 STL Land, LLC, Case No. 6:19-bk-04763; 204 Fox Land, LLC, Case No. 6:19-bk-04765; 205 Wolf Land, LLC, Case No. 6:19-bk-4766; 5500 Midland Land, LLC, Case No. 6:19-bk-04768; Appleton Land, LLC, Case No. 6:19-bk-04769; High Point Land, LLC, Case No. 6:19-bk-04770.
[2] Doc. Nos. 590, 595, 840.
[3] Doc. No. 860.

1

modified[4] (the "Debtors' Joint Plan"), similarly complies with § 1129 of the Bankruptcy Code and is confirmable.[5] After considering the evidence and legal arguments, I conclude the Debtors' Joint Plan fails to satisfy the Bankruptcy Code and is not confirmable.

## The Debtors

The Debtors are Delaware limited liability companies which together form a commercial real estate ownership group owned by the Gillespie Delaware Family Trust. Joseph Gill Gillespie, III, formed the Debtors to acquire, own, and operate hotel properties in Missouri, Wisconsin, Connecticut, North Carolina, New York, Montana, and Wyoming.[6] Land Capital, LLC ("Land Capital"), is the sole member of Consolidated Land Holdings, LLC ("Consolidated Land"). Consolidated Land is the sole member of seven co-debtors: 200 STL Land, LLC ("200 STL");[7] 100 Berlin Land, LLC ("100 Berlin");[8] High Point, LLC ("High Point");[9] 204 Fox Land, LLC ("204 Fox");[10] 5500 Midland Land, LLC ("5500 Midland");[11] Appleton Land, LLC ("Appleton Land");[12] and 205 Wolf Land, LLC ("205 Wolf")[13] (collectively, the "Land Debtors"). The Land Debtors are separate entities and each hold fee simple title to parcels of land and the hotels constructed thereon. The Land Debtors' hotel properties

---

[4] Doc. Nos. 591, 638, 687, and 924.
[5] All references to the Bankruptcy Code refer to 11 U.S.C. § 101, *et. seq.*
[6] The principal place of business for each Debtor is in Ormond Beach, Florida.
[7] 200 STL's property is in St. Louis, Missouri.
[8] 100 Berlin's property is in Cromwell, Connecticut.
[9] High Point's property is in High Point, North Carolina.
[10] 204 Fox's property is in Cheyenne, Wyoming.
[11] 5500 Midland's property is in Billings, Montana.
[12] Appleton Land's property is in Appleton, Wisconsin.
[13] 205 Wolf's property is in Albany, New York.

2

are leased to non-debtor hotel management and operating companies under ground leases.[14] So, the Land Debtors act as landlords under the ground leases to distinct, separate tenant entities.[15]

The Debtors financially struggled starting about two years before bankruptcy when a dispute arose with its largest secured lender, DW Commercial Financing, LLC ("DW"),[16] causing delays in necessary renovation and modernization projects at the hotel properties. The demand for rooms at the hotels slowly declined and revenues dropped. The Debtors ultimately defaulted on obligations and filed voluntary petitions for Chapter 11 bankruptcy on July 22, 2019.[17]

## **Origin of Wells Fargo's Secured Claim**

On July 18, 2017, roughly two years before this bankruptcy case was filed, Natixis Real Estate Capital LLC ("Natixis") made a secured loan for $62,465,000 with potential future funding of up to an additional $14,880,000 (together, the "CMBS Loan") to the Land Debtors.[18] The CMBS Loan is evidenced by a loan agreement ("Loan Agreement") dated as of July 18, 2017, with split promissory notes for $62,465,000 made by the Land Debtors to Natixis.[19] The CMBS Loan is further evidenced and allegedly secured by various other loan documents referenced in the Loan Agreement including for each Land

---

[14] None of these companies is a Chapter 11 debtor other than Appleton Holdings, LLC, Case No. 6:19-bk-04883-KSJ (the "Appleton Tenant"). The Appleton Tenant has separate counsel; its case is not part of the jointly administered cases.
[15] Lender's and Debtors' Stipulations for June 30, 2021 Contested Confirmation Hearing Regarding Debtors' Joint Plan of Reorganization at 4, Doc. No. 929.
[16] The Debtors and DW settled their dispute during this bankruptcy proceeding. Doc. No. 266.
[17] Doc. No. 1.
[18] Wells Fargo's Ex. 2, Doc. No. 915-2.
[19] Wells Fargo's Ex. 3, Doc. No. 915-3.

Debtor an Open-End Mortgage, Assignment of Leases and Rents and Security Agreement dated July 18, 2017 ("Security Instruments").[20]

On August 31, 2017, Natixis assigned its right, title, and interest in the CMBS Loan and the Security Instruments to Wells Fargo Bank, as Trustee for the Benefit of the Registered Holders of UBS Commercial Mortgage Trust 2017-C3, Commercial Mortgage Pass-Through Certificates, Series 2017-C3, in its Capacity as "Lead Securitization Note Holder."[21] Wells Fargo is the Land Debtors' only secured lender and the largest creditor.[22] Wells Fargo's allowed secured claim is secured by a first priority lien against the Land Debtors' Properties, including each Land Debtor's ground lease and all rents, profits, and proceeds therefrom.[23] Wells Fargo has a secured claim of not less than $61,578,860.95.[24]

### **The Competing Plans**

Wells Fargo filed its Disclosure Statement[25] and Liquidating Plan ("Wells Fargo's Plan").[26] The Debtors also filed their Disclosure Statement[27] and Joint Plan of Reorganization (the "Debtors' Joint Plan").[28] A secured creditor of Land Capital, KCP

---

[20] Wells Fargo's Ex. 4, Doc. No. 915-4.
[21] Wells Fargo's Ex. 31 at 215-16, Doc. No. 916-1. Midland Loan Services, a division of PNC Bank, National Association, is the special services to Wells Fargo. Lender's and Debtors' Stipulations for June 30, 2021 Contested Confirmation Hearing Regarding Debtors' Joint Plan of Reorganization at 2, Doc. No. 929.
[22] Lender's and Debtors' Stipulations for June 30, 2021 Contested Confirmation Hearing Regarding Debtors' Joint Plan of Reorganization at 2, Doc. No. 929.
[23] Lender's and Debtors' Stipulations for June 30, 2021 Contested Confirmation Hearing Regarding Debtors' Joint Plan of Reorganization at 2, Doc. No. 929.
[24] The allowed secured claim amount will be $75,206,784.95 if Wells Fargo is awarded the Prepayment Premium. Doc. Nos. 268, 929.
[25] Doc. No. 589.
[26] Doc. No. 590. Wells Fargo has since filed a First and Second Supplement to the Liquidating Plan. Doc. Nos. 595, 840.
[27] Doc. No. 592.
[28] Doc. No. 591. The Debtors have filed three modifications. Doc. Nos. 638, 687, 924.

Seven Ground, LLC ("KCP"),[29] initially joined the Debtors' Joint Plan.[30] KCP has since assigned its claim to APluss, LLC ("APluss"), and APluss has stepped into KCP's shoes.[31]

The Debtors' Joint Plan is premised on the exchange of APluss's secured claim for equity in the Reorganized Debtors,[32] plus an infusion of up to $1 million (the "Equity Infusion") from APluss (the "Equity Investor").[33] The Equity Investor will become the sole owner of the Reorganized Debtors, who will continue to operate its hotels. The hope is that operating cash flow will be sufficient to make all payments under the Debtors' Joint Plan. The Debtors' current cash on hand will pay any outstanding Administrative Expenses.

The Debtors' Joint Plan classifies claims and interests into five classes of impaired claims.[34] The first class is "Allowed Secured Claim of CMBS Lender," i.e., Wells Fargo;[35] the second class is "Allowed Secured Claim of KCP", now held by the Equity Investor; the third class is "Allowed General Unsecured Claim of Radisson"; the fourth

---

[29] Based on a previous order entered by this Court, KCP has an allowed secured claim against Debtor Land Capital, LLC in the amount of $10,666,950.38, plus attorneys' fees and costs incurred prior to the petition date. Doc. No. 286.
[30] Doc. No. 591.
[31] Doc. No. 829.
[32] Under the Debtors' Joint Plan, the Reorganized Debtors will consist of Appleton Land (Red Lion Hotel Paper Valley in Appleton, Wisconsin), 200 STL (City Place Hotel in St. Louis, Missouri), 204 Fox (Red Lion Hotel & Conference Center in Cheyenne, Wyoming), and 5500 Midland (Montana Trail Head Inn in Billings, Montana). The assets of High Point (Craftsman Plaza Hotel in High Point, North Carolina), 100 Berlin (Red Lion Cromwell in Cromwell, Connecticut), and 205 Wolf (Red Lion Hotel in Albany, New York) will be sold. Doc. No. 924.
[33] APluss is owned by Digvijay Gaekwad; however, if the Debtors' Joint Plan is confirmed, Mr. Gaekwad testified that Mr. Gillespie would handle all operational aspects of the hotels.
[34] Doc. No. 591.
[35] The Debtors' Joint Plan proposes to reduce Wells Fargo's secured claim based on a valuation hearing conducted by the Court, ultimately held on June 1, 2021.

class is "Allowed General Unsecured Claims";[36] and the fifth class is "Equity Interests in the Debtors."[37] Wells Fargo, in Class 1, will retain its security interest (equal to the valuation determined by the Court) and receive deferred cash payments.[38] KCP/APluss, in Class 2, in exchange for its secured claim will receive equity in the Reorganized Debtors.[39]

Class 3 includes only one claim—the allowed general unsecured claims of Radisson Hotels International, Inc. ("Radisson"). Radisson has unsecured claims against six of the seven Land Debtors[40] based on a guaranty by the Land Debtor of its tenant's franchise agreement with Radisson. Radisson's claims range from $1,282,345.58 to $2,563,353.57.[41] Under the Debtors' Joint Plan, the Equity Infusion of $1 million will pay Allowed Administrative Expenses and give Radisson an agreed $350,000 ("Radisson Payment").[42] For the payment to Radisson, the Debtors' Joint Plan states that "Radisson has agreed to receive a license application from the Appleton Tenant which is now Acres Capital LLC and give reasonable consideration to approval of same."[43] Radisson is the *only* creditor of any Land Debtor to vote to accept the Debtors'

---

[36] This class would include any deficiency claims of Wells Fargo.
[37] Doc. No. 591.
[38] Doc. Nos. 591, 924.
[39] Doc. Nos. 591, 924.
[40] Radisson *does not* hold a claim against 200 STL. Lender's and Debtors' Stipulations for June 30, 2021 Contested Confirmation Hearing Regarding Debtors' Joint Plan of Reorganization at 5, Doc. No. 929.
[41] Radisson holds claims against 100 Berlin in the amount of $1,387,046.79 (Claim 3-1); 204 Fox in the amount of $1,379,774.78 (Claim 2-2); 205 Wolf in the amount of $1,548,172.17 (Claim 2-1); 5500 Midland in the amount of $1,282,345.58 (Claim 2-1); Appleton Land in the amount of $2,563,353.57 (Claim 2-1); and High Point in the amount of $1,424,571.17 (Claim 3-1).
[42] Doc. No. 638.
[43] Doc. No. 638. The Appleton Tenant is currently operating as the Red Lion Hotel Paper Valley.

6

Joint Plan.[44] No other creditor other than joint plan proponent, KCP/APluss, supports confirmation of the Debtors' Joint Plan.

The "remainder of the Equity Infusion after payment of Administrative Expense Claims and the Radisson Payment" will go to the Allowed Unsecured Class 4 Claims.[45] As amended, the Debtors' Joint Plan states Class 4 shall "receive the same percentage on its deficiency claim as the percentage Class 3 receives on its claims, which is currently estimated at seven percent (7%). Payment of this 7% dividend shall be over a period of five (5) years at 2.92% per annum."[46]

Wells Fargo's Plan is a straightforward plan of liquidation that would sell the Debtors' properties and use the proceeds to pay down Wells Fargo's allowed secured claim as of the Petition Date of approximately $75,206,784.95 (including the prepayment premium to which Wells Fargo asserts it is entitled). Wells Fargo's Plan divides claims against each Land Debtor into five classes according to the underlying basis and subsequent treatment for each. The classes are "Secured Claim of Wells Fargo," "Secured Claim," "General Unsecured Claims," "Convenience Class," and "Interests."[47]

Because § 1129(c) of the Bankruptcy Code allows for confirmation of only one plan, the first step is to determine if both competing plans are confirmable.[48] And, if one is not confirmable, the Court need not consider the factors used to evaluate competing

---

[44] Doc. No. 648.
[45] Doc. Nos. 591, 687.
[46] Doc. No. 687.
[47] Doc. No. 590.
[48] *In re Walden Palms Condo. Ass'n*, 625 B.R. 543, 548 (Bankr. M.D. Fla. 2020).

7

plans.[49] Because the Court already has determined Wells Fargo's Plan of Reorganization meets the requirements of § 1129(a) and (b).[50] I now must determine if the Debtors' Joint Plan also meets the same requirements. I find it does not.

## **Debtors' Joint Plan is Not Confirmable**

"Section 1129(a) is the blueprint listing each element a plan proponent must establish to confirm a Chapter 11 Plan."[51] Unless § 1129(b) applies, all sixteen elements of § 1129(a) must be met, including § 1129(a)(1) which requires the plan to comply with all provisions of the Bankruptcy Code.[52] The plan proponent must prove each element by a preponderance of the evidence.[53]

### *Radisson is Not Entitled to Separate Classification*

One mandatory provision is § 1122(a) which requires plans to place substantially similar claims in the same class. Wells Fargo argues the Debtors' Joint Plan does not comply with § 1122 because it improperly gerrymanders Radisson's claims into a separate class, Class 3, and provides unjustified disparate treatment simply to "buy" Radisson's support and vote. I agree.

Plan proponents have considerable, but not unlimited, discretion when classifying claims and interests.[54] And, "[w]hen objections to classification under § 1122(a) arise,

---

[49] *Id.* (citing *In re Holley Garden Apartments, Ltd.*, 238 B.R. 488, 493 (Bankr. M.D. Fla. 1999)).
[50] Doc. No. 860.
[51] *In re Walden Palms Condo. Ass'n*, 625 B.R. at 548.
[52] *Id.* (citing 11 U.S.C. § 1129(a)).
[53] *Id.* (citing *In re Monticello Realty Invs., LLC*, 526 B.R. 902, 912 (Bankr. M.D. Fla. 2015); *In re J.C. Householder Land Trust #1*, 501 B.R. 441, 447-48 (Bankr. M.D. Fla. 2013)).
[54] *Olympia & York Fla. Equity Corp. v. Bank of N.Y. (In re Holywell Corp.)*, 913 F.2d 873, 880 (11th Cir. 1990) (quoting *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581, 586 (6th Cir. 1986)) (recognizing that without a limit on the power to classify creditors, the "potential for abuse would be significant").

courts are usually presented with allegations that the plan proponent separately classified similar claims only to ensure acceptance by at least one class of impaired claims as required by § 1129(a)(10). Such manipulation is viewed as an abuse of Chapter 11."[55]

One of the key mandates for confirmation of a plan of reorganization is that at least one impaired class of creditors must accept.[56] Section 1129(a)(10) requires: "If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by an insider."[57] The only class of claims against a Land Debtor that has accepted the Debtors' Joint Plan is Class 3, Radisson. Without this single affirmative vote in Class 3, the Debtors' Joint Plan fails.

The Debtors' Joint Plan unjustifiably divides similar general unsecured claims into two classes: Class 3, "Allowed General Unsecured Claims of Radisson"; and Class 4, "Allowed General Unsecured Claims," which would include any deficiency claims of Wells Fargo and all other unsecured creditors. Because Wells Fargo's still-unknown deficiency claim could exceed Radisson's outstanding claims, had the Debtors combined all unsecured claims into one class, it could not get the "yes" vote of one needed non-insider class without Wells Fargo's support, and they could not confirm its plan. By separately classifying Radisson's claims, arguably, they have one accepting class.

---

[55] *In re City of Colo. Springs Spring Creek Gen. Imp. Dist.*, 187 B.R. 683, 687-88 (Bankr. D. Colo. 1995).
[56] *See id.*
[57] 11 U.S.C. § 1129(a).

Under § 1122(a), "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."[58] Because similar claims are separately classified, the gerrymandering analysis applies. And, "[w]hile the Code does not address whether all substantially similar claims must be placed in the same class, courts have held that separate classification of similar claims must be supported by a legitimate business reason."[59] From the case law, "one clear rule" has emerged on § 1122 claims classification: "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan."[60]

The Debtors' Joint Plan improperly gerrymanders Radisson into a separate class and provides Radisson with disparate treatment compared to other unsecured creditors to obtain an impaired consenting class. As the sole Class 3 Claimant, Radisson will receive the "Radisson Payment," which is a lump sum cash payment for $350,000, to be paid on the Effective Date from funds contributed by the Equity Investor.[61] By contrast, Class 4 creditors will receive the 7% payment over five years at an interest rate

---

[58] Section 1122(a), in full, reads: "Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). The exception in subparagraph (b) applies only to small claims that may be classified together for "administrative convenience," and there is no contention Radisson's Class 3 claims would fall within that exception.

[59] *In re Monticello Realty Invs.*, 526 B.R. at 913 (citing *In re Porcelli*, 319 B.R. 8, 10 (Bankr. M.D. Fla. 2004); *In re Main Line Corp.*, 335 B.R. 476, 479 (Bankr. S.D. Fla. 2005)).

[60] *Phoenix Mutual Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1279 (5th Cir. 1991).

[61] Doc. No. 638.

of 2.92%.[62] This proposal unfairly discriminates in favor of Radisson and against the general unsecured Class 4 creditors.

The Debtors' Joint Plan states that "Radisson has agreed to receive a license application from the Appleton tenant which is now Acres Capital LLC and give reasonable consideration to approval of same."[63] This explanation is not a legitimate business reason for separately classifying the claims of Radisson from the other general unsecured claims. The Appleton Tenant operates as a Red Lion Hotel. The Debtors do not operate this hotel, and any agreement between the Appleton Tenant and Radisson to consider a *possible* future license application and its potential benefits is tangential. First, the Appleton Tenant has not made an application to Radisson. And, even if they had, Radisson has no binding commitment to provide a license. In exchange for $350,000 and its "yes" vote, Radisson only has agreed to "give reasonable consideration" to the franchise application.[64] The Court finds the Debtors' Joint Plan's explanation for separate classification misleading and does not constitute a valid basis for separate classification.

So, there is no legal or logical reason for unsecured creditors of equal priority to receive disproportionately different pro rata portions of the Equity Infusion. The only real reason to separate the two is to gerrymander an accepting impaired class of votes.

---

[62] Doc. No. 687.
[63] Doc. No. 638.
[64] Doc. No. 638.

Radisson is the only creditor of any Land Debtor to accept the Debtors' Joint Plan.[65] But, if the Radisson claims were, as required by § 1122, classified with the other unsecured claims, the Debtors' Joint Plan would not have an accepting impaired class as required by § 1129(a)(10). The Court finds that the Debtors' Joint Plan does not comply with § 1129(a)(1).

Radisson also is not a creditor of one of the Land Debtors, 200 STL, and there is *no* accepting class for that specific Land Debtor.[66] In jointly administered cases, such as the case here, courts are split about how the impaired accepting class rule should be applied. The "per plan" approach states that a joint plan need garner only the acceptance of a single impaired creditor class.[67] The "per debtor" approach states that an impaired accepting class must be present for each debtor.[68] I agree with the "per debtor" approach.

The Debtors are not substantively consolidated.[69] They remain separate and independent legal entities. And, absent substantive consolidation, the subsections of § 1129(a) must be satisfied by *each* Debtor.[70] Because Radisson is not a creditor of 200 STL,

---

[65] The vote of KCP, and its successor APluss, as to Class 2 is not sufficient to constitute a non-insider accepting class because APluss is both a plan proponent and will own 100% of the equity in the Reorganized Debtors if the Debtors' Joint Plan is confirmed.

[66] Lender's and Debtors' Stipulations for June 30, 2021 Contested Confirmation Hearing Regarding Debtors' Joint Plan of Reorganization at 5-6, Doc. No. 929.

[67] *See JPMCC 2007-C1 Grasslawn Lodging, LLC v. Transwest Resort Props. Inc. (In re Transwest Resort Props., Inc.)*, 554 B.R. 894, 901 (D. Ariz. 2016), *aff'd*, 881 F.3d 724, 729 (9th Cir. 2018); *JPMorgan Chase Bank, N.A. v. Charter Comm'ns Operating, LLC (In re Charter Comm'ns)*, 419 B.R. 221, 266 (Bankr. S.D.N.Y. 2009); *In re Enron Corp.*, No. 01-16034 (AJG), 2004 Bankr. LEXIS 2549, at *234-35 (Bankr. S.D.N.Y. July 15, 2004); *In re SGPA, Inc.*, No. 1-01-02609 (RJW), 2001 Bankr. LEXIS 2291, at *21-22 (Bankr. M.D. Pa. Sept. 28, 2001).

[68] *See In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 302-03 (Bankr. D. Del. 2011); *In re Tribune Co.*, 464 B.R. 126, 180-83 (Bankr. D. Del. 2011), *on reconsideration in part*, 464 B.R. 208 (Bankr. D. Del. 2011), *aff'd*, 587 B.R. 606 (D. Del. 2018), and *aff'd in part*, 587 B.R. 606 (D. Del. 2018).

[69] The parties have stipulated that the Land Debtors were separate and distinct entities from each other prior to the petition date and have remained separate and distinct entities since the petition date. Lender's and Debtors' Stipulations for June 30, 2021 Contested Confirmation Hearing Regarding Debtors' Joint Plan of Reorganization at 4, Doc. No. 929.

[70] *In re Tribune Co.*, 464 B.R. at 182-83.

the Debtors' Joint Plan has not been accepted by an impaired class for each Debtor as required by § 1129(a)(10). The Debtors' Joint Plan is not confirmable.[71]

### *The Debtors' Joint Plan Unfairly Discriminates*

Alternatively, under § 1129(a)(8), each class of claims must either accept the plan or not be impaired under the plan. Where, as is the case here, a voting class of creditors has rejected the plan, confirmation still is possible if all requirements of § 1129(a) are met *except* for (a)(8) if the "cram down" requirements of § 1129(b) are met. The cram down provisions require a finding that "the plan does not discriminate unfairly, and is fair and equitable," regarding each impaired, non-consenting class.[72]

Wells Fargo argues that its unsecured deficiency claims[73] and the other Class 4 claims receive treatment far less favorable than that of Radisson, also an unsecured creditor. The concept of unfair discrimination is not defined by the Bankruptcy Code.[74] "The hallmarks of the various standards have been whether there is a reasonable basis

---

[71] I also note that, with the Court's acceptance of Wells Fargo's valuation of $58,700,000 for the four contested properties, the Debtors' Joint Plan cannot satisfy § 1129(a)(9). Mr. Gaekwad, the owner of APluss, testified that he made the offer to purchase equity in the Reorganized Debtors conditioned on a valuation of no more than $41.9 million for the four contested properties. During the trial on June 30, 2021, he agreed to proceed if the valuation went to $50 million. But, with the valuation exceeding $58 million, Mr. Gaekwad is not obligated to make APluss's Equity Infusion, and the Debtors cannot pay the Radisson Claim or its administrative expenses; if not paid, the Debtors' Joint Plan cannot satisfy the feasibility requirement of § 1129(a)(9).

[72] 11 U.S.C. § 1129(b)(1).

[73] Whether Wells Fargo has an unsecured claim relies, in part, on the Court's valuation of the four properties that will remain as part of the Reorganized Debtors under the Debtors' Joint Plan. Lender's and Debtors' Supplemental Stipulations for June 1, 2021 Contested Valuation Hearing at 3, Doc. No. 905. By separate order, this Court has adopted Wells Fargo's appraisal reports and its valuation of the four contested properties. Accordingly, those four properties are collectively valued at $58,700,000. While the parties initially agreed to value the Craftsman Plaza Hotel in High Point, North Carolina ("High Point"), at $6,700,000, the parties since have agreed that High Point will be sold. So, the total valuation of $58,700,000 excludes the net proceeds of the sale of High Point, as well as the Red Lion Cromwell in Cromwell, Connecticut ("Cromwell") and the Red Lion Hotel in Albany, New York ("Albany"), which also are to be sold. Because the property sales have not been completed, it is unknown if, and to what extent, Wells Fargo is unsecured. *See* Lender's and Debtors' Supplemental Stipulations for June 1, 2021 Contested Valuation Hearing at 3, Doc. No. 905; *see also* Doc. No. 924.

[74] *In re 710 Long Ridge Rd. Operating Co., II, LLC*, No. 13-13653 (DHS), 2014 WL 886433, at *19 (Bankr. D.N.J. Mar. 5, 2014).

for the discrimination and whether the debtor can confirm and consummate a plan without the proposed discrimination."[75]

The Debtors' Joint Plan unfairly discriminates between Radisson and the other unsecured creditors. Radisson gets paid $350,000 immediately; the other similarly situated unsecured creditors get 7% spread over five years with minimal interest. This is not fair or equitable and unfairly discriminates between similarly situated creditors. The Debtors' Joint Plan does not meet the cram down requirements and cannot satisfy § 1129(b).

## Conclusion

The Debtors' Joint Plan of Reorganization is not confirmable because it does not comply with § 1129(a)(1), (a)(9), and (b) of the Bankruptcy Code. By contrast, Wells Fargo's Plan meets all requirements and is confirmable. No reason exists to compare the respective benefits of the two plans. Accordingly, it is

**ORDERED:**

1. Wells Fargo's Plan of Reorganization (Doc. Nos. 590, 595, 840) is **CONFIRMED**. Wells Fargo will submit a separate Confirmation Order consistent with this Memorandum Opinion.

2. Confirmation of APluss/Debtors' Joint Plan of Reorganization (Doc. Nos. 591, 638, 687, 924) is **DENIED**.

3. Debtors' Motion for Cramdown (Doc. No. 930) is **DENIED**.

###

Attorney Roy S Kobert will serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

---

[75] *Id.*